UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KEVIN NELSON,

                    Plaintiff,

                                                    5:05-CV-0093
v.                                                  (GTS/DEP)

RANGER, INC.,

                    Defendant.

_____

RANGER, INC.,

                    Defendant/Third-Party
                    Plaintiff,

v.

ALYNE TRUCKING, INC.,

                    Third-Party Defendant.

_____

APPEARANCES:                                        OF COUNSEL:

FINKELSTEIN & PARTNERS, LLP                         ELEANOR L. POLIMENI, ESQ.
  Counsel for Plaintiffs
Newburgh, NY

WHEELER, TRIGG, O'DONNELL, LLP                      ERIK D. NADOLINK, ESQ.
  Counsel for Defendant/Third-Party Plaintiff       JOHN M. FITZPATRICK, ESQ.
Denver, CO

LAW OFFICES OF BRADY & CARAFA                       JAMES C. BRADY, ESQ.
  Counsel for Defendant/Third-Party Plaintiff
Liverpool, NY

SUGARMAN LAW FIRM, LLP                              KEVIN R. VAN DUSER, ESQ.
  Counsel for Third-Party Defendants
Syracuse, NY

HON. GLENN T. SUDDABY, United States District Judge

<u>**MEMORANDUM DECISION and ORDER**</u>

Currently pending before the Court in this products liability action filed by Kevin Nelson ("Plaintiff") is an amended motion for summary judgment filed by Ranger, Inc. ("Defendant") (Dkt. No. 33), a motion for summary judgment filed by Alyne Trucking, Inc. ("Third-Party Defendant") (Dkt. No. 32), a motion filed by Plaintiff to preclude the testimony of two of Defendant's experts (Dkt. No. 31), and a motion filed by Third-Party Defendant that Defendant's spoliation claim not be considered (Dkt. No. 50).  For the reasons set forth below, Defendant's amended motion for summary judgment is granted in part and denied in part; the Third-Party Defendant's motion for summary judgment is denied; Plaintiff's motion to preclude the testimony of Defendant's experts is denied; and the Third-Party Defendant's motion that Defendant's spoliation claim not be considered is denied.

I.      **GENERAL FACTUAL BACKGROUND**

On March 4, 2003, Plaintiff, a maintenance/repair man, was called to replace a gasket on a Ranger Series 22 pump that had been mounted on the underside of a truck trailer leased by Third-Party Defendant.  While replacing the gasket, Plaintiff's clothing became entangled on the rotating power take off ("PTO") drive shaft at its connection to the Ranger Series 22 pump (hereinafter the "Pump"), thereby causing Plaintiff to sustain severe and serious injuries.  More specifically, Plaintiff's clothing caught on a "set screw," which protruded above the surface of the universal joint ("u-joint"), which connected the Pump to the PTO.

Defendant manufactured the pump, as well as a section of the drive shaft known as the pump drive shaft.  Defendant did not manufacture the PTO, the PTO drive shaft, or the u-joint used to connect the two drive shafts.  In addition, Defendant did not in any way install or connect

2

its pump and/or pump drive shaft to the u-joint.  (*Compare* Dkt. No. 33, Part 1 [containing Def.'s Rule 7.1 Statement] *with* Dkt. No. 34 [Plf.'s Rule 7.1 Response].)

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, as set forth in the parties' Rule 7.1 Statement and Rule 7.1 Response, is assumed in this Decision and Order, which is intended primarily for review by the parties.  (*Id.*)

## II.   SUMMARY OF PLAINTIFF'S CLAIMS

On January 26, 2005, Plaintiff filed the current action.  Liberally construed, Plaintiff's Complaint asserts that Defendant is liable for the injuries Plaintiff sustained on March 4, 2003, under the following theories: (1) breach of the implied warranty of fitness and merchantability; (2) negligence; and (3) strict liability.  (Dkt. No. 1.)  More specifically, Plaintiff alleges that he sustained injuries as a result of the negligent and defective design of a pump manufactured by Ranger.  (*Id.*)

## III.   LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

In their motion papers, the parties demonstrated a sound understanding for the standard governing motions for summary judgment.  As a result, and for the sake of brevity, the Court will not recite the well-known legal standard governing motions for summary judgment in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga County Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

## IV.   ANALYSIS OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.   Defendant's Duty to Plaintiff

As a threshold matter, a manufacturer must owe a duty to an individual injured by the manufacturer's product before the manufacturer can potentially incur liability for the injured

party's injuries. *See McCarthy v. Olin Corp.*, 119 F.3d 148, 170 (2d Cir. 1997) (Calabresi, J., dissenting) (noting that "[f]or either a strict products liability or negligent products liability claim, "a duty is needed; . . . that duty must be breached by the defendant's manufacture or sale of a defective product; . . . the plaintiff must suffer an injury; and . . . the defect must be the cause of the plaintiff's injury.  These are not the elements of a cause of action in strict products liability.  Those elements are much more specific, and depend on the theory of liability being asserted.").

Manufacturers of a product have a duty to market safe products.  *Dalton v. Stedman Machine Co.*, 05-CV-0452, 2008 WL 351676, at *4 (N.D.N.Y. Feb. 7, 2008) (McAvoy, J.).  This duty is owed, at a minimum, to all foreseeable users of the product.  *Liriano v. Hobart Corp.*, 132 F.3d 124, 126 (2d Cir. 1998) ("It is well-settled under New York law that a manufacturer is under a duty to use reasonable care in designing its product so that it will be safe when used in the manner for which the product was intended, as well as unintended yet reasonably foreseeable use.").  As a result, Defendant owed Plaintiff a duty to manufacture a safe Pump.

**B.     Strict Products Liability Based Upon Design Defect**

Under New York's strict product liability law, a manufacturer is liable to an injured party if

> '(1) the product is defective because it is not reasonably safe as marketed; (2) the product was used for a normal purpose; (3) the defect was a substantial factor in causing the plaintiff's injuries; (4) the plaintiff by the exercise of reasonable care would not have discovered the defect and apprehended its injury; and (5) the plaintiff would not have otherwise avoided the injury by the exercise of ordinary care.'

*Marshall v. Sheldahl, Inc.*, 150 F. Supp.2d 400, 403 (N.D.N.Y. 2001) (Kahn, J.) (quoting *Urena v. Biro Mfg. Co.*, 114 F.3d 359, 363 [2d Cir. 1997]) (other citations omitted).  "Essential to all these claims is that the plaintiff demonstrate that the product was defective and that the product's

defect caused the plaintiff's injury." *Yaccarino v. Motor Coach Indus., Inc*., 03-CV-4527, 2006 WL 3257220, at *3 (E.D.N.Y. Nov. 9, 2006) (citing *Gilks v. Olay Co., Inc*., 30 F. Supp.2d 438, 443 [S.D.N.Y. 1998] ["Whether the action is pleaded in strict products liability, breach of warranty, or negligence, plaintiff bears the burden of showing that a defect in the product was a substantial factor in causing the injury."]).

      **1.    Causation**

      "Under New York law, a plaintiff in a products liability action, regardless of under which theory he proceeds, must demonstrate that a defect in the relevant product proximately caused the claimed injury–i.e., that it was a substantial factor in bringing about such injury." *Michels v. Kraft Foods, Inc*., 97-CV-0638, 1998 WL 799156, at *3 (W.D.N.Y. Oct. 27, 1998).  Therefore, as a threshold matter, in order for a defendant to incur liability to a plaintiff for his injuries, the plaintiff must offer proof that the defendant's product caused the plaintiff's injuries.

      Here, Defendant argues that its product, the Pump, did not cause Plaintiff's injuries. Instead, Defendant argues that Plaintiff's injuries were caused by the "set screw" protruding from a u-joint, which caught Plaintiff's clothing.  In response, Plaintiff's expert argues that, because all external power inputs to the Pump connect to the Pump's drive shaft with one or more set screws that protrude from the outside, the Pump's design caused Plaintiff's injuries.

      The Court concludes that there is a genuine issue of material fact regarding whether the Pump's design caused Plaintiff's injuries because Plaintiff has offered specific evidence that (1) the protrusion of the "set screw" is caused by the design of the Pump, and (2) the manufacturer could have foreseen Plaintiff's injuries as more specifically explained below in Part IV.C. of this Decision and Order; and this evidence suggests that Defendant was aware of some inherent danger in the design of the ultimate product.  As a result, it is for a jury to decide whether

Plaintiff would have suffered injuries if a smaller screw were used to connect the Pump drive

shaft to the PTO through the u-joint, as well as whether it is feasible to connect the Pump to the

PTO via u-joint using smaller screws.[1]

### 2.     Defective Product

"Under New York State Law, a device is of defective design w[h]ere it is 'not reasonably

safe or presented an unreasonable risk of harm to the user.'" *Billone v. Sulzer Orthopedics, Inc*.,

99-CV-6132, 2005 WL 2044554, at *4 (W.D.N.Y. Aug. 25, 2005) (quoting *Fane v. Zimmer*, 927

F.2d 124, 128 [2d Cir. 1991]). "Thus, a plaintiff must demonstrate that the product "presented a

substantial likelihood of harm and feasibly could have been designed more safely." *Billone*,

2005 WL 2044554, at *4 (quoting *Fane*, 927 F.2d at 128).[2]

In an effort to overcome Defendant's amended motion for summary judgment, Plaintiff

presents the expert report and testimony of a mechanical engineer, Dr. Igor Paul, who states that

the Pump should contain a keyed drive shaft guard "to shield the packing gland adjustment area

---

[1]      As mentioned below in Part IV.A. of this Decision and Order, in order for a party to maintain a products liability claim, that party must, among other things, suffer an injury.  It is undisputed that Plaintiff suffered injuries.  As a result, for purpose of the current motions, the Court finds that Plaintiff has satisfied this element as a matter of law.

[2]      *See also Smith v. Herman Miller, Inc*., 03-CV-5358, 2005 WL 3501883, at *2 (E.D.N.Y. Dec. 21, 2005) (explaining that, in a design defect case, to demonstrate that a product is not reasonably safe, "the plaintiff must prove that: (1) although the product was manufactured according to its intended design, the design itself devised a product that was not reasonably safe, and (2) there was a feasible alternative design for the product which would have been safer and that would have prevented plaintiff's injury") (internal quotation marks and citation omitted); *Sheldahl, Inc*., 150 F. Supp.2d at 403 ("When an injured party asserts that a design defect caused the injury, the focus of the Court's inquiry is on whether the product, as designed, was reasonably safe or presented an unreasonable risk of harm to the user.  Specifically, the standard is whether, if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner.  Thus, Plaintiff ha[s] the burden of presenting evidence that the product, as designed, presented a substantial likelihood of harm and feasibly could have been designed more safely.") (citation omitted).

from the keyed drive shaft projection" due to the "direct proximity" of the objects.  (Dkt. No. 43, at 50-52.)  Dr. Paul further states that a guard similar to the guards that exist on other Ranger pumps, and "various agricultural 'implements' and PTO driven accessories," would have prevented Plaintiff's injuries.  (Dkt. No. 43, at 49-55.)

According to Dr. Paul, "[a]lthough the pump manual cautions that the pump should be shut down and stopped before adjustment of the packing gland nuts, from a practical point of view this is seldom done in the field or in the maintenance shop, because the amount of leakage is effected differently by a rotating (operating) pump and by the heating up of the packing during operation."  (Dkt. No. 43, at 50.)  In addition, Dr. Paul states that adjusting the packing gland nuts on the pump while the unit is "under power" to address the "periodic seal leakage" is both "preferabl[e] and foreseeabl[e]."  (*Id*. at 51.)[3]  Finally, Dr. Paul states that "[d]espite Ranger's self-proclaimed and self-serving stated inability to guard this area because it is a 'general purpose pump' and they don't know 'how it will be used,' the fact is that the provided keyed drive shaft design requires and limits the direct power input to the pump to be provided either by a keyed coupling . . . or a belt/sheave drive . . . to whatever outside drive will be used."  (*Id*. at 51-52.)  In other words, "the hazard producing rotating parts, which are determined and required by the pump drive shaft design, are both universal for this pump and completely foreseeable regardless of what 'system' the pump is used in."  (*Id*. at 52.)  As a result, Dr. Paul states that Defendant should have incorporated (1) a protective guard, or warnings "that the pump could not

---

[3]      This conclusion is supported by the deposition testimony of Plaintiff, who testified that he was "taught" by his supervisor to adjust the packing gland nuts while the drive shaft was rotating  (Dkt. No. 35, Part 4, at 56-57, 59), and contested by the deposition testimony of Plaintiff's supervisor, Paul Radcliffe, who testified that he gave Plaintiff specific instructions not to turn or tighten the Pump's gland nuts with the engine running and the PTO engaged.  (Dkt. No. 35, Part 7, at 63-69.)

be used in its current configuration without guarding the keyed drive shaft" and (2) instructions on how the keyed drive shaft "could and should be guarded."  (*Id*. at 54.)  Because Defendants did not provide such things, Plaintiff's expert concludes that the Pump was defectively designed.

Through the introduction of his expert's testimony and his physical injuries, Plaintiff has presented specific record evidence that the Pump is not reasonably safe.  *See Humphrey v. Diamant Boart, Inc*., 556 F. Supp.2d 167, 172 (E.D.N.Y. 2008) ("[T]he burden is on the plaintiff to present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner.  In proving a design defect, plaintiff may rely on circumstantial evidence, including the occurrence of the accident, to show that the product did not function as intended.") (internal quotation marks and citations omitted).  In addition, Plaintiff's expert has identified a feasible alternative design for the Pump that would have been safer and that would have prevented plaintiff's injury–i.e., a Pump that incorporates either an internal or integrated guard.  As a result, it is for the jury to decide whether a pump that incorporates either an integrated or internal guard is "feasible" when its cost and effectiveness are taken into consideration, as well as whether such a guard, which only covers the length of the Pump's drive shaft, would have actually prevented Plaintiff's injuries.

### 3.    Exercise of Reasonable Care

Regardless of the presence of a defect, a design defect claim cannot withstand a motion for summary judgment if the risk of injury was so open and obvious that the plaintiff could have avoided his injuries by exercising reasonable and ordinary care.  *Sheldahl, Inc*., 150 F. Supp.2d at 403-05.  In *Sheldahl, Inc*., the plaintiff suffered a loss of her index finger after she attempted to manually reattach a roll of polyethylene material moving through a "bubble out bag machine"

without turning the machine off, by grasping hold of the machine.  *Sheldahl, Inc*., 150 F. Supp.2d at 401-02.  In an action against the manufacturer, the plaintiff claimed that the machine was defectively designed because the machine did not "contain a hand cover or guard to prevent individuals from inserting their fingers into the machine's rolls as it presses the plastic into bags." *Id*. at 403.

In granting the defendant's motion for summary judgment on the plaintiff's design defect claims, District Judge Lawrence E. Kahn, of this Court, stated that, "[p]utting aside for the moment the issue of whether the 'Model 108-56S Bubble Out' machine was defective, . . . Plaintiff's actions alone render her defective design claims deficient . . . [because plaintiff] had a duty to both discover and avoid the injury in the exercise of reasonable and ordinary care."  *Id*. at 404.  Judge Kahn went on to state that, "upon an examination of the photographic and documentary evidence describing the Model '108-56S Bubble Out' machine, the dangers of the plastic conveyer portion of it were so open and obvious that no reasonable person would attempt to reach into it and grab the polyethylene feeder material without first shutting the machine off." *Id*.[4]

Unlike the plaintiffs in *Sheldahl, Inc*. and *Almonte*, through both his own testimony as well as the testimony of his expert, Plaintiff in this case has presented evidence that it was part of the normal and expected activities of a user of the Pump to adjust the packing gland nuts while

---

[4]      In reaching his conclusion, Judge Kahn relied on *Almonte v. Batenfield of Am.*, 96-CV-1226, Decision and Order at 13-14 (E.D.N.Y. filed Sept. 16, 1998) (Azrack, M.J.) ("Plaintiff does not claim or demonstrate that it was part of the normal and expected activities of a user of the Sheldahl machine to place their hands in or near the moving belts.  While plaintiff is correct in asserting that 'reasonableness' is generally a jury question, he neglects to consider the preliminary inquiry. [Plaintiff's] actions were not reasonably foreseeable, such that these events fell within the probability of risks that would lead to the eventual injury and loss.  If [Plaintiff] had exercised even the slightest degree of care, such as turning off the power to the machine, he could have avoided his injury.").

the unit was operating.  More specifically, Plaintiff testifies that, although he was "very skeptical" of adjusting the gland nuts while working immediately near a rotating drive shaft, he worked near the rotating shaft because he was taught by his supervisor that the engine and PTO drive shaft were to be activated when the bolts needed tightening so that the person performing the work could ascertain whether the proper leakage from the Pump was being achieved.  (Dkt. No. 35, Part 4, at 55-60.)  In addition, Dr. Paul testifies that although the Pump "should be shut down if you're performing maintenance on it, . . . in my opinion, because of the complexity, . . . a mechanic in the field [would not do so]."  (Dkt. No. 35, Part 14, at 43.)  As a result, the Court concludes that there is a genuine issue of material fact regarding whether a reasonable person would attempt to adjust the gland nuts while the PTO and Pump were operating.

For all of these reasons, the Court denies Defendant's amended motion to for summary judgment regarding Plaintiff's strict products liability claim based on a theory of design defect.

### C.    Negligence Based Upon Design Defect

"To make out a prima facie case for negligence in New York, Plaintiff must show: (1) that the manufacturer owed [her] a duty to exercise reasonable care; (2) breach of that duty so that a product is rendered defective, i.e., reasonably certain to be dangerous; (3) that the defect was the proximate cause of plaintiff's injury; and (4) loss or damage."  *Galletta v. Valmet, Inc.*, 04-CV-0313, 2007 WL 963288, at *3 (N.D.N.Y. Mar. 30, 2007) (Mordue, CJ.) (citing *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 [2d Cir. 1997]).

"Where the plaintiff claims negligence under a design defect theory, the focus shifts from the characteristics of the product itself to the conduct of the manufacturer; plaintiff must additionally prove that the manufacturer could have foreseen the injury and, therefore, acted unreasonably in designing the product."  *Mustafa v. Halkin Tool, Ltd.*, 00-CV-4851, 2007 WL

959704, at *10 (E.D.N.Y. Mar. 29, 2007) (citations omitted).  "Under New York law, a manufacturer has a duty to use reasonable care in designing its product so as to avoid any unreasonable risk of harm when the product is used in the manner for which it was intended, as well as an unintended yet reasonably foreseeable use." *Brooks v. Outboard Marine Corp.*, 47 F. Supp.2d 380, 386 (W.D.N.Y. 1999) (citation omitted).  "Thus, the plaintiff must show not only that the product was defective when it left the manufacturer's hands, but also that the manufacturer could have foreseen the injury and therefore acted unreasonably in designing its product." *Brooks*, 47 F. Supp.2d at 386 (citations omitted).

The Court has already determined that a genuine issue of material fact exists regarding whether the Pump was defective.  In addition, the Court finds that there is sufficient record evidence from which a rational fact finder could conclude that the manufacturer could have foreseen Plaintiff's injuries based on (1) the testimony of Nathan Rast, President of Ranger, Inc., who testified that the entire drive line and connection to the Pump should be guarded (Dkt. No. 35, Part 13, at 13-17), (2) the fact that the installation, operation and maintenance manual, Ranger Inc.'s website and the warning label on the non-shaft-end of the pump recommend guarding or shielding the Pump (Dkt. No. 35, Part 13, at 19-21), (3) the fact that other Ranger Pump models are equipped with a guard, and (4) the fact that the Court has already determined that a reasonable fact finder could conclude that adjusting the gland nuts while the Pump and PTO are running is foreseeable.

For all these reasons, the Court denies Defendant's amended motion for summary judgment regarding Plaintiff's negligence claim based on a theory of design defect.

## C.   Negligence Based Upon Failure to Warn

"Under New York law, Plaintiff may recover in strict product liability if the manufacturer

11

fails to warn consumers of the risks and dangers associated with the use of its product." *Sheldahl, Inc*., 150 F. Supp.2d at 405 (citation omitted).  However, "New York recognizes two exceptions to a failure to warn claim: (1) where the injured party was fully aware of the hazard through general knowledge, observation or common sense, i.e., he was a knowledgeable user, and (2) where the risks are open and obvious."  *Santoro ex rel. Santoro v. Donnelly*, 340 F. Supp.2d 464, 486 (S.D.N.Y. 2004).  Thus, a "[p]laintiff has a duty to both discover and avoid the injury in the exercise of reasonable and ordinary care."  *Dalton*, 2008 WL 351676, at *5 (citation omitted).  "In this regard, the New York courts hold that if a manufacturer's warning would have been superfluous given an injured party's actual knowledge of the specific hazard that caused the injury, the Court may, as a matter of law, grant summary judgment."  *Dalton*, 2008 WL 351676, at *5 (citing *Sheldahl, Inc*., 150 F. Supp.2d at 405).

Plaintiff acknowledged in his deposition that the risk of injury from adjusting the gland nuts while the PTO was operating was open and obvious.  (Dkt. No. 35, Part 4, at 56-57 [stating that he was "very skeptical" about working near a rotating drive shaft, and that he had a specific concern that his clothing could get caught on the drive shaft as it was rotating].)  In addition, the Pump contained warnings about the dangers of working on the Pump while it was running on both the non-shaft-end of the Pump itself, as well as on the installation, operation and maintenance manual.  Finally, the Court finds that the overwhelming record evidence suggests that the danger of injury was open and obvious.

For all these reasons, the Court grants Defendant's amended motion for summary judgment regarding Plaintiff's failure-to-warn claim.[5]

_____

[5]        The Court notes that Plaintiff's failure-to-warn claim is dismissed on the alternative ground that, in his motion papers, Plaintiff failed to address Defendant's amended motion for summary judgment on this ground.  *See Taylor v. City of New York*, 269 F. Supp.2d

D.      **Breach of Warranty**

"Breach of warranty claims are distinct from strict products liability and negligence

causes of action, but there is a high degree of overlap between them and as a practical matter, the

distinction between the defect concepts in tort law and in implied warranty theory may have little

or no effect in most cases." *Clarke v. LR Sys.*, 219 F. Supp.2d 323, 331 (E.D.N.Y. 2002)

(internal quotation marks and citation omitted); *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 254-

55 (N.Y. 1995) ("Although the products liability theory sounding in tort and the breach of

implied warranty theory authorized by the UCC coexist and are often invoked in tandem, the

core element of 'defect' is subtly different in the two causes of action."). "In a breach of implied

warranty action, a plaintiff must demonstrate that the product was not fit for the purpose for

which it was intended." *Clarke*, 219 F. Supp.2d at 331 (citations omitted). "Under New York

law, a design defect may be actionable under a strict products liability theory if the product is not

reasonably safe." *Denny*, 87 N.Y.2d at 255.

"It is this negligence-like risk/benefit component of the defect element that differentiates

strict products liability claims from UCC-based breach of implied warranty claims in cases

involving design defects." *Id*. at 258. "While the strict products concept of a product that is 'not

reasonably safe' requires a weighing of the product's dangers against its over-all advantages, the

UCC's concept of a 'defective' product requires an inquiry only into whether the product in

question was 'fit for the ordinary purposes for which such goods are used.'" *Id*. "The latter

inquiry focuses on the expectations for the performance of the product when used in the

68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for
summary judgment on one ground and the party opposing summary judgment fails to address the
argument in any way."); *see also Lipton v. County of Orange*, 315 F. Supp.2d 434, 446
(S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff
fails to respond to a defendant's arguments that the claim should be dismissed.").

customary, usual and reasonably foreseeable manners." *Id*. at 258-59.  "The cause of action is one involving true 'strict' liability, since recovery may be had upon a showing that the product was not minimally safe for its expected purpose-without regard to the feasibility of alternative designs or the manufacturer's 'reasonableness' in marketing it in that unsafe condition."

For the same reasons that the Court finds that there is a genuine issue of material fact regarding whether the Pump is defective, the Court finds that there is a genuine issue of material fact regarding whether the Pump was fit for the ordinary purposes for which it was used.

As a result, the Court denies Defendant's amended motion for summary judgment regarding Plaintiff's breach-of-implied-warranty claim.  Finally, the Court notes that, to the extent Plaintiff attempted to assert a breach-of-express-warranty claim in his Complaint, such a claim must be dismissed because Plaintiff failed to respond to Defendant's argument in its amended motion for summary judgment that Plaintiff does not have standing to bring an express warranty claim because he was not a consumer and did not receive an express warranty from Ranger, Inc.

## V.       ANALYSIS OF REMAINING MOTIONS

### A.       Third-Party Defendant's Motion for Summary Judgment

The Third-Party Defendant has moved for summary judgment "on the ground that the Plaintiff did not sustain a 'grave injury' as required under the Worker's Compensation Law." (Dkt. No. 32.)  Defendant opposes Third-Party Defendant's motion on two grounds: (1) "the medical records of the Plaintiff are more than sufficient to raise an issue of fact as to whether, for the purpose of meeting the 'grave injury' threshold under WC Law Section 11, the Plaintiff sustained a 'traumatic brain injury,' whether this has resulted in a 'permanent' disability, and whether the disability is 'total'"; and (2) "Alyne should be barred from raising the 'grave injury'

14

defense given its spoliation of evidence . . . ."  (Dkt. No. 38.)

For the reasons set forth on pages 6 through 9 of Defendant's memorandum of law in

opposition to Third-Party Defendant's motion for summary judgment, the Court finds that a

genuine issue of material fact exists regarding whether Plaintiff sustained a "grave injury" for

purposes of Section 11 of the Worker's Compensation Law.  (*See* Dkt. No. 38, Part 1, at 6-9.)[6]

However, the Court also finds that the Third-Party Defendant is not barred from raising its

"grave injury" defense at trial.

As a result, the Court denies the Third-Party Defendant's motion for summary judgment.

### B.    Plaintiff's Motion to Preclude Testimony of Defendant's Experts

In deciding Defendant's amended motion for summary judgment, and the Third-Party

Defendant's motion for summary judgment, the Court need not, and does not, rely on the

opinions of the two experts challenged by Plaintiff–Richard Kaletsky and Lev Nelik.  As a

result, for purposes of deciding those motions, the Court need not, and does not, decide whether

Defendant's experts satisfy the standards set forth in *Daubert v. Merrell Dow Pharm., Inc*., 509

U.S. 579.

For this reason, the Court denies without prejudice Plaintiff's motion to preclude the

testimony of Defendants' experts.  The Court notes that Plaintiff may renew this motion at, or

before, trial.

### C.    Third-Party Defendant's Motion Regarding Defendant's Spoliation Argument

In its papers filed in opposition to the Third-Party Defendant's motion for summary

judgment, Defendant argues that the Court should strike the Third-Party Defendant's affirmative

---

[6]    The Court notes that it rejects Defendant's alternative argument–regarding
spoliation–for the reasons stated below in Part III.C. of this Decision and Order.

defense that Plaintiff did not sustain a "grave injury" due to the Third-Party Defendant's spoliation of evidence, specifically, the Pump and PTO.  (Dkt. No. 38, Part 1, at 10-11.)  The Third-Party Defendant responds by asking the Court to disregard this spoliation argument on the ground that it is untimely.  (Dkt. No. 50.)  Defendant replies that its spoliation argument is not untimely (because it is not submitted as part of a dispositive motion requesting the judgment in Defendant's favor on its Third-Party Complaint but as part of a defense to the Third-Party Defendant's motion for summary judgment).  (Dkt. No. 51.)

Regardless of whether Defendant's argument is timely, and whether the Third-Party Defendant actually spoliated the Pump and PTO, such spoliation is immaterial to whether Plaintiff suffered a "grave injury" as defined by Section 11 of the Worker's Compensation Law. As a result, striking the Third-Party Defendant's "grave injury" affirmative defense would not be a sanction that is narrowly tailored to such spoliation.

For these reasons, the Court denies the Third-Party Defendant's motion that Defendant's spoliation argument not be considered, and the Court rejects Defendant's spoliation argument. The parties are advised that the Court would again entertain this spoliation argument at, or before, trial.

**ACCORDINGLY** it is

**ORDERED** that Defendant's amended motion for summary judgment (Dkt. No. 33) is **<u>GRANTED</u> in part** and **<u>DENIED</u> in part**; and it is further

**ORDERED** that Plaintiff's failure-to-warn claim and breach-of-express-warranty claim, asserted in its Complaint (Dkt. No. 1), are **<u>DISMISSED</u>**; and it is further

**ORDERED** that the Third-Party Defendant's motion for summary judgment (Dkt. No. 32) is **<u>DENIED</u>**; and it is further

**ORDERED** that Plaintiff's motion to preclude the testimony of Defendant's experts (Dkt. No. 31) is **<u>DENIED</u> without prejudice**; and it is further

**ORDERED** that the Third-Party Defendant's motion regarding Defendant's spoliation argument (Dkt. No. 50) is **<u>DENIED</u>**; and it is further

**ORDERED** that counsel are directed to appear at a pretrial conference on **DECEMBER 8, 2009** at 2:00 p.m. in chambers in Syracuse, New York with settlement authority, and the in event that the case does not settle, trial will be scheduled at that time.

Dated: November 17, 2009
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge